USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/24/2020__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

KAY XANTHAKOS,                              :
                                            :
                          Plaintiff,        :          17-CV-9829
                                            :
            -against-                       :     OPINION AND ORDER
                                            :
CITY UNIVERSITY OF NEW YORK, JUDITH         :
BERGTRAUM, ROBERT LEMIEUX, and ALI          :
VEDAVARZ,                                   :
                                            :
                          Defendants.       :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

        Plaintiff Kay Xanthakos sued City University of New York ("CUNY") and individual

Defendants Judith Bergtraum, Robert Lemieux, and Ali Vedavarz for gender-based pay

discrimination and retaliation pursuant to Title IX of the Education Amendments of 1972, as

amended, 20 U.S.C. § 1681 *et seq.* ("Title IX"); Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* ("Title VII"); the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"); Section

1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"); the New York State

Human Rights Law, New York Executive Law § 290 *et seq.* ("NYSHRL"); and the New York

City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq* ("NYCHRL")*.  See* Am. Compl., Dkt.

24.  Plaintiff also sued for retaliation pursuant to the Americans with Disabilities Act, 42 U.S.C.

§ 12101 *et seq.* ("ADA"), and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* ("RA").  *Id.*

Defendants moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).[1]  Dkt. 35.  For the following reasons, Defendants' motion is

GRANTED IN PART and DENIED IN PART.

---

[1]        This case was originally assigned to Hon. Deborah Batts.  Following Judge Batts' death, the case was
reassigned to the undersigned.

## BACKGROUND[2]

Plaintiff is a licensed architect who has been Chief Architect at CUNY for over twenty years.  Am. Compl. ¶¶ 3, 17.  She is also an Assistant Director in CUNY's Department of Design Construction and Management ("DDCM").  *Id.* ¶ 20.  DDCM is a department within the Facilities, Planning, Construction, and Management ("FPCM") division.  *Id.*  Over the course of her career at CUNY, Plaintiff has managed the design and construction of new buildings and facilities, conducted professional staff development programs, implemented departmental guidelines, and supervised project managers across CUNY campuses. *Id.* ¶ 21.  Before joining CUNY in 1996, Plaintiff worked for fifteen years in various architectural firms.  *Id.* ¶ 18.  She holds a Leadership in Energy and Environmental Design ("LEED") certificate and has a Masters degree in Architecture from Columbia University.  *Id.* ¶¶ 16–17.

At all relevant times, Iris Weinshall was Vice Chancellor of FPCM, Judith Bergtraum was Weinshall's Deputy, Robert Lemieux was the Executive Director of the DDCM, and Ali Vedavarz was the Director of Engineering Services.  *Id.* ¶¶ 28–30, 33.  In June 2008, Vedavarz became Plaintiff's supervisor.  *Id.* ¶ 37.  Around the same time, Bergtraum and Lemieux informed Plaintiff that she was to concentrate on CUNY-wide initiatives, including developing architectural standards, overseeing a public assembly program, developing and implementing a records management policy, developing a professional development program, coordinating with CUNY attorneys to address ADA-related issues, and responding to concerns raised by the United States Office of Civil Rights.  *Id.* ¶ 36.  Despite the change in reporting and the expansion of Plaintiff's role, Plaintiff remained the University Chief Architect and an Assistant Director in DDCM, and she continued to review projects early in their design phase.  *Id.* ¶¶ 37, 39.

---

[2]     For purposes of this opinion, Plaintiff's well-pled factual allegations are taken as true and set forth herein.

**Plaintiff's Complaints About Pay Inequity**

In 2001, CUNY hired Anton Wolfshorndl as a Project Manager to be supervised by Plaintiff. *Id.* ¶¶ 46–47. Wolfshorndl is not a licensed architect and is not LEED-certified. *Id.* ¶ 49. In 2006, Wolfshorndl was selected for promotion to Assistant Director over a female project manager who was a licensed architect. *Id.* ¶ 48. In 2009, notwithstanding Wolfshorndl's inferior qualifications and shorter tenure at CUNY, Vedavarz told Plaintiff that she and Wolfshorndl should have the same salary. *Id.* ¶ 49. In 2016, Plaintiff learned that Wolfshorndl's annual salary was $11,000 more than hers. *Id.* ¶ 51. Plaintiff also alleges that at least three male assistant directors in DDCM earn more than Wolfshorndl, and thus more than Plaintiff, despite not being LEED-certified and having a shorter tenure at CUNY than Plaintiff. *Id.* ¶ 52.

Plaintiff alleges that two male directors, Jay Goldstein and Arthur Fasolino, earn significantly more than she does. *Id.* ¶¶ 53–54. Goldstein, the Director of Construction, earns $33,000 more per year than Plaintiff. *Id.* ¶ 53. Goldstein does not have a four-year college degree, is not a licensed architect or engineer, and has only worked at CUNY for five years. *Id.* Fasolino, the Director of Energy and Facility Sustainability, earns at least $15,000 more than Plaintiff. *Id.* ¶ 54. Fasolino is not LEED-certified and began working at CUNY after Plaintiff did. *Id.*

As early as 2007, Plaintiff complained directly to Bergtraum and Vedavarz that she was not paid as much as her male colleagues. *Id.* ¶¶ 45, 50. Bergtraum initially told Plaintiff that she would "catch up" to the salaries of other assistant directors, but she later claimed that there was a "freeze" on raises. *Id.* ¶ 50. Vedavarz "quickly change[d] the subject" whenever Plaintiff raised concerns regarding her pay. *Id.*

In October 2015, Plaintiff met with Vedavarz as part of her annual performance review process. *Id.* ¶ 55. During the meeting, Plaintiff complained that she was not being paid equally to her male colleagues. *Id.* On January 4, 2016, Plaintiff received her annual performance evaluation from Vedavarz; Plaintiff claims that the review did not detail her accomplishments, did not provide measurable goals, and did not rate her as highly as she believes her performance warranted. *Id.* ¶ 56. The review also stated that Plaintiff would begin to be responsible for smaller projects; smaller projects were inconsistent with her position as University Chief Architect. *Id.* Plaintiff immediately pointed out areas of her work that were missing or undervalued and repeated her concerns about pay inequity to Vedavarz. *Id.*

In January 2016, Plaintiff wrote a formal response to her performance review that detailed her objections and emphasized her concerns about her salary vis-à-vis her male colleagues. *Id.* ¶ 57. The memorandum explicitly stated: "an ongoing critical issue for me has been the lack of pay equity," and indicated that she had "raised the issue on numerous occasions with [her] supervisor and with the Vice-Chancellor." *Id.* Plaintiff delivered a copy to Vedavarz and to Human Resources. *Id.* Plaintiff claims Vedavarz's reaction to her memorandum was "hostile"; he allegedly told her several times that she "should not have done this" and that it would make things worse. *Id.* ¶ 58. On April 29, 2016, Plaintiff's attorney asserted a claim for pay discrimination in a letter to CUNY's General Counsel. *Id.* ¶ 60.

**Alleged Retaliation**

Plaintiff alleges that she was retaliated against as a result of her complaints about pay inequity. Specifically, Plaintiff alleges that after she submitted her memorandum to human resources and filed her claim for pay discrimination, Lemieux and Vedavarz isolated her and diminished her responsibilities. *Id.* ¶ 62. For example, Lemieux periodically stopped inviting

4

Plaintiff to staff meetings, was hostile towards her, and ignored her in a meeting with DDCM management. *Id.* ¶¶ 63–64. Similarly, Vedavarz directed Plaintiff to work on smaller projects outside of her job description, reassigned certain of her larger projects to male project managers, and failed to invite her to a holiday luncheon to which her male colleagues were invited. *Id.* ¶¶ 65–67. Plaintiff also alleges that Vedavarz applied different standards to her work than he did to male assistant directors, became hostile when she raised questions about her assignments or differential treatment, and was unresponsive to her requests for project-related information. *Id.* ¶¶ 68–69. Plaintiff further alleges that she has not received a performance review since January 1, 2016. *Id.* ¶ 61.

**Lehman Concert Hall Project**

In 2013, Plaintiff began working on the design of the Lehman Concert Hall, an events space located in the Bronx. *Id.* ¶ 70. In addition to overseeing the early design stages, Plaintiff consulted with CUNY attorneys to ensure that the design for the concert hall was ADA-compliant. *Id.* ¶¶ 36, 71-74. Plaintiff repeatedly raised concerns to her supervisors that the proposed design did not meet regulations for dispersed wheelchair seating and that, as designed, individuals in wheelchairs would be unable to enter or exit through the front of the concert hall. *Id.* ¶¶ 72–77. Lemieux and Vedavarz dismissed her concerns. *Id.* ¶¶ 75, 77, 79.

Plaintiff asserts claims for gender-based pay discrimination and retaliation in violation of the EPA, Title VII, Section 1983, the NYSHRL, the NYCHRL, and Title IX. *Id.* ¶¶ 80-129. Plaintiff also asserts retaliation claims pursuant to the ADA and the RA. *Id.* ¶¶ 120-24.

## DISCUSSION[3]

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint does not need to "contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).  On a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff.  *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

## I.   Defendants' Motion to Dismiss Plaintiff's EPA, Title VII, Section 1983, NYSHRL, and NYCHRL Gender-Based Pay Discrimination Claims is Denied

### A.  Equal Pay Act Claim

The EPA provides that "[n]o employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex."  29 U.S.C. § 206(d)(1).  To plead a violation of the EPA, a plaintiff must allege facts that plausibly show: "(i) the employer pays different wages to employees of the opposite sex; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are performed under similar working conditions."  *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999).  To survive a motion to dismiss, "a plausible EPA claim must include 'sufficient factual

---

[3]     Defendants also moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), but they never explained why this Court lacks subject-matter jurisdiction.  Although the Court must always assess whether it has subject matter jurisdiction, Plaintiff's claims are primarily based on federal statutes, as to which this Court clearly has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The non-federal claims, at least at this juncture, all appear to arise from the same bundle of operative facts as the federal claims.  Accordingly, the Court has supplemental jurisdiction over the non-federal claims pursuant to 28 U.S.C. § 1367.  Thus, to the extent Defendants' Rule 12(b)(1) motion was not abandoned, it is denied.

matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job *content* was 'substantially equal.'" *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 256 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) (emphasis in original); *see Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (noting that a plaintiff "need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal' in skill, effort, and responsibility."). The Second Circuit has emphasized that "[w]hether two positions are 'substantially equal' for [EPA] purposes is a question for the jury." *Lavin-McEleney*, 239 F.3d at 480; *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1311 (2d Cir. 1995) ("[I]t is for the trier of fact to decide if [there] is a significant enough difference in responsibility to make the jobs unequal."); *cf. Lenzi v. Systemax, Inc.*, No. 14-CV-7509, 2015 WL 6507842, at *5 (E.D.N.Y. Oct. 26, 2015) (noting "the fact-specific nature of [EPA] claims, and the general impropriety of dismissing them at the pleadings stage").

Here, Plaintiff alleges that she was paid significantly less than her male colleagues. As noted *supra*, Plaintiff alleges that she was paid $11,000 less than Wolfshorndl, even though she initially supervised Wolfshorndl, and even though he is not licensed or LEED-certified and has less education and experience than Plaintiff. Am. Compl. ¶¶ 46–49, 51. Plaintiff also alleges that at least three other male assistant directors in DDCM, with less experience and inferior qualifications, are "paid even more than Wolfshorndl," and thus more than $11,000 more than Plaintiff. *Id.* ¶52. Finally, Plaintiff alleges that Goldstein and Fasolino are paid up to $33,000 more than Plaintiff despite having lesser qualifications and comparable job responsibilities. *Id.* ¶¶ 53–54.

Plaintiff also sufficiently alleges that she performs substantially comparable, if not more complex, work than her higher-paid male colleagues. With respect to the other male assistant

directors in DDCM, Plaintiff claims that her work requires a "greater level of expertise and skill" than the work done by those project management assistant directors, "as well as more knowledge and a broader perspective and understanding of the design and construction industry, regulatory issues, and [the inner workings of] CUNY." *Id.* ¶ 41; *see Chiaramonte v. Animal Med. Ctr.*, No. 13-CV-5117, 2014 WL 3611098, at *5 (S.D.N.Y. July 22, 2014) (denying a motion to dismiss an EPA claim where plaintiff alleged that she and a comparator "both performed similar work," but that "in addition to those duties, [plaintiff] shouldered responsibilities that [the comparator] did not match"). Moreover, Plaintiff alleges that although she has the "education, skills, and experience to do the project management work," not all of the higher-paid project management assistant directors have the qualifications to do the CUNY-wide work that she does. Am. Compl. ¶ 41; *see Scelfo v. Aurora Concept Inc.*, No. 02-CV-7835, 2006 WL 336038, at *10–11 (S.D.N.Y. Feb. 10, 2006) (denying defendant's motion for summary judgment on EPA claim because the plaintiff alleged that a comparator with less education and experience was paid more than she was). Finally, Plaintiff claims that her CUNY-wide responsibilities are comparable to Fasolino's, even though he outranks her (he is a director).[4] *Id.* ¶ 54; *see Chepak v. Metro. Hosp.*, 555 F. App'x 74, 76 (2d Cir. 2014) (it is the "job content and not [the] job title or description" that determines "whether there was a violation of the anti-discrimination laws.").

---

[4]       Although Defendants argue that Plaintiff mistakenly compares herself to men with different job descriptions or higher titles, the jobs in question need not be identical in order to establish an EPA violation. *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 471 (S.D.N.Y. 2013) ("the EPA and implementing regulations are clear that the statute is concerned with the provision of equal pay for equal work, and that the '[a]pplication of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance.'") (quoting 29 C.F.R. § 1620.13(e)); *see also Lavin-McEleney*, 239 F.3d at 478 (finding that an employee's rank, years of service, and degrees earned can be used to isolate comparable positions because they accurately capture equality of skill, effort, and responsibility); *Downes v. JP Morgan Chase & Co.*, No. 03-CV-8991, 2006 WL 785278, at *24 (S.D.N.Y. Mar. 21, 2006) ("a comparison of two employees for the purposes of a discrimination lawsuit cannot be based solely on their job titles or job descriptions.").

In sum, Plaintiff's allegations that she was paid less than her male colleagues for doing equal, if not more complex, work are sufficient to state a plausible EPA claim.[5]  *See Kassman*, 925 F. Supp. 2d at 471 (holding that plaintiff adequately stated an EPA claim by identifying a higher-earning male comparator and asserting that his "qualifications, experience, and responsibilities were no greater" than hers); *Chiaramonte*, 2014 WL 3611098, at *5; *Downes*, 2006 WL 785278, at *25, 27, *report and recommendation adopted*, No. 03-CV-8991, 2007 WL 1468218, at *14 (S.D.N.Y. May 16, 2007).

### B.  Title VII, Section 1983, NYSHRL, and NYCHRL Discrimination Claims

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation . . . because of such individual's . . . sex."[6]  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)).  To plead a gender discrimination claim under Title VII, a plaintiff must plead facts that plausibly show that: (1) the employer discriminated against her and (2) the discrimination was due to her sex.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).

---

[5]     Plaintiff concedes that, due to the EPA's statute of limitations, she cannot recover damages for pay differentials prior to December 15, 2014.  *See* Pl. Mem. of Law, Dkt. 38 at 15 (citing *Marzano v. S. New England Tel. Co.*, No. 3:16-CV-1274, 2018 WL 4341149, at *5 (D. Conn. Sept. 10, 2018) (finding three-year limitations period appropriate for EPA claim at the motion to dismiss stage where, *inter alia*, plaintiff alleged she had complained about pay inequities).

[6]     Discrimination claims brought under Title VII, Section 1983, and the NYSHRL are all analyzed under the same standard, *see Vega*, 801 F.3d at 88; *Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 577–78 (S.D.N.Y. 2013); *Cox v. Quick & Reilly, Inc.*, 401 F. Supp. 2d 203, 214–15 (N.D.N.Y. 2005), while claims brought under the NYCHRL are analyzed using a more permissive standard.  *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 109–10 (2d Cir. 2013).  As such, a viable pay discrimination claim under Title VII or the NYSHRL establishes *a fortiori* liability under the NYCHRL.  *See Husser v. N.Y.C. Dep't. of Educ.*, 137 F. Supp. 3d 253, 271 (E.D.N.Y. 2015).  Thus, the Court will provide a single discussion of Plaintiff's gender-based discrimination claims brought pursuant to Title VII, Section 1983, the NYSHRL, and the NYCHRL.

A plaintiff may establish discrimination by alleging that she was paid less than her male colleagues for doing equal work.[7]  *See Lenzi*, 944 F.3d at 110 ("[O]ne way an employer might discriminate against an employee because of her sex is to pay her less than her male peers who perform equal work."); *Gibson v. Jacob K. Javits Convention Ctr. of N.Y.*, No. 95-CV-9728, 1998 WL 132796, at *4 n.54 (S.D.N.Y. Mar. 23, 1998) ("If the jobs in question are substantially similar, a plaintiff may of course advance a Title VII wage discrimination claim based on allegations that she was paid lower wages than a male counterpart who performed substantially similar work.").  To establish that sex was a motivating factor of the alleged discrimination, a plaintiff need only "allege facts that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Vega*, 801 F.3d at 84–87 (quotations omitted).  A plaintiff may do so by alleging facts "that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Id.*  As discussed in Section I(A), *supra*, Plaintiff has plausibly alleged that she was paid less than similarly situated male colleagues.

Plaintiff has also adequately alleged that her gender was a motivating factor in the pay disparity.  At the outset, Plaintiff's allegations that her male colleagues were paid higher salaries permit an inference of gender-based discrimination.  *See Barrett v. Forest Labs*, 39 F. Supp. 3d 407, 435 (S.D.N.Y. 2014) ("It is well-established that a showing that female employees were treated 'less favorably' than 'similarly situated' male employees gives rise to an inference of discrimination." (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229–30 (2d Cir. 2014))).

---

[7]    As such, a plausible EPA claim can also establish a claim for discrimination under Title VII.  *See* 29 C.F.R. § 1620.27 ("In situations where jurisdictional prerequisites of both the EPA and [Title VII] are satisfied, any violation of the [EPA] is also a violation of [T]itle VII.").  Unlike the EPA, however, Title VII does not *require* a Plaintiff to establish that she "performed equal work for unequal pay."  *Lenzi*, 944 F.3d at 110.  That is merely one way to demonstrate discrimination; Title VII prohibits any form of sex-based compensation discrimination.  *Id.*

Moreover, Plaintiff's credentials, including her advanced degrees, certifications, experience, and over twenty years of service at CUNY, suggest that her male colleagues' higher salaries were not "based on seniority, merit, quantity or quality of production, or any other factor other than sex." *Lenzi*, 944 F.3d at 111 (quoting *Washington Cty. v. Gunther*, 452 U.S. 161, 168 (1981)).

Plaintiff alleges specific instances of differential treatment by Lemieux and Vedavarz to support the inference that the alleged pay disparity was motivated by gender.  For example, Plaintiff claims Lemieux did not invite her to monthly staff meetings to which the male directors and assistant directors were invited.  Am. Compl. ¶ 63.  At a meeting with DDCM management at which Plaintiff was the only woman present, Lemieux introduced all of the male employees but did not introduce her.  *Id.* ¶¶ 63–64.  Lemieux "made disparaging comments" about a former female director but never made disparaging comments about former male employees.  *Id.* ¶ 35. Vedavarz invited her male colleagues to a holiday luncheon but did not invite her.[8]  *Id.* ¶ 67. Vedavarz reassigned some of her projects to a male project manager and became hostile when she inquired about his differential treatment of her.  *Id.* ¶¶ 66, 68.  At the pleading stage, these instances of differential treatment are adequate to support the inference that Plaintiff's sex was a motivating factor of the alleged pay inequity.  *See Vega*, 801 F.3d at 88 (noting that the plaintiff's burden at the pleading stage to demonstrate that sex was a motivating factor is "minimal" and even if her other allegations of discrimination do not independently constitute adverse actions, they shed light on defendants' motivation and bolster her claim that she was treated differently because of her gender); *Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, No. 12-CV-2285, 2014 WL 5822628, at *30-31 (E.D.N.Y. Nov. 6, 2014) (denying a motion to dismiss plaintiffs' NYSHRL gender discrimination claim because plaintiffs sufficiently alleged that they

---

[8]     When Plaintiff learned about the luncheon and asked about it, Vedavarz said she "could attend."  Am. Compl. ¶ 67.  The only women who were initially invited were secretaries.  *Id.*

"were paid less than their male counterparts with equal seniority" and alleged "circumstantial evidence of disparate treatment").

Finally, Plaintiff repeatedly raised the issue of pay inequity and asserted a claim for pay discrimination with CUNY's General Counsel but "no action was taken to address [Plaintiff's] complaint." *Id.* ¶¶ 45, 50, 56–57, 59–60.  At the pleading stage, "allegations that the company repeatedly ignored complaints of [] discrimination, permits at least a plausible inference that the disparities in base pay occurred as the result of intentional discrimination." *Barrett*, 39 F. Supp. 3d at 436.

In short, Plaintiff has adequately stated claims of gender discrimination pursuant to Title VII, 1983, NYSHRL, and NYCHRL.  Accordingly, Defendants' motion to dismiss those claims is denied.

## II.   Defendants' Motion to Dismiss Plaintiff's Title VII, Section 1983, EPA, NYSHRL, and NYCHRL Retaliation Claims is Denied

To state a claim for retaliation pursuant to Title VII, Section 1983, the EPA, and the NYSHRL a plaintiff "must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [she] opposed any unlawful employment practice."[9] *Vega*, 801 F.3d at 87, 90 (quoting 41 U.S.C. § 2000e-3(a)); *Taylor v. City of New York*, 207 F. Supp. 3d 293, 307 (S.D.N.Y. 2016).

---

[9]     The NYCHRL imposes a more lenient standard.  Accordingly. retaliation under Title VII, Section 1983, the EPA, or the NYSHRL will establish *a fortiori* liability under the NYCHRL.  *See Mihalik*, 714 F.3d at 109; *cf. Baez v. Anne Fontaine USA, Inc.*, No. 14-CV-6641, 2017 WL 57858, at *4 (S.D.N.Y. Jan. 5, 2017).

A significant difference between retaliation claims brought under Title VII and those brought under Section 1983, the EPA, the NYSHRL, and the NYCHRL is the applicable limitations period.  "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 days or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred."  *Vega*, 801 F.3d at 78–79 (quotation omitted).  Here, Plaintiff filed a charge of discrimination with the EEOC on December 5, 2017.  Am. Compl. ¶ 9.  As such, any conduct that occurred before February 8, 2017, 300 days before her EEOC filing, is time-barred.  *See* Defs.' Mem. of Law at 17.

An adverse action for purposes of a retaliation claim is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry v. White*, 548 U.S. 53, 68 (2006)).  In determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation must be considered "both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (internal quotations omitted); *see also Vega*, 801 F.3d at 92 ("Some of these actions, considered individually, might not amount to much.  Taken together, however, they plausibly paint a mosaic of retaliation and an intent to punish [plaintiff] for complaining of discrimination.").

To plead retaliation, a plaintiff must plausibly plead a connection between the adverse action and her protected activity.  *Vega*, 801 F.3d at 90.  Retaliation need not be the only cause of the employer's action; a plaintiff must merely plead "that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  A causal connection can be established either "through temporal proximity" or through "evidence of retaliatory animus directed against the plaintiff by the defendant." *Delville v. Firmenich, Inc.*, 920 F. Supp. 2d 446, 466 (S.D.N.Y. 2013) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

---

Section 1983, the EPA, the NYSHRL, and the NYCHRL each has a three-year statute of limitations period. *See Taylor*, 207 F. Supp. 3d at 302, 307; *Volpe v. Nassau Cty.*, 915 F. Supp. 2d 284, 292 (E.D.N.Y. 2013).  Thus, for purposes of Plaintiff's Section 1983, EPA, NYSHRL, and NYCHRL retaliation claims, conduct that occurred before December 15, 2014, three years before the filing of this lawsuit, is time-barred.

### A.  Plaintiff's Section 1983, EPA, NYSHRL, and NYCHRL Retaliation Claims

As noted, *supra,* Plaintiff claims that she suffered numerous adverse actions after she complained in 2016 about pay inequity.[10]  Specifically, Plaintiff alleges, *inter alia*, that she: has not received a performance review since early 2016; has been stripped of responsibility for many of her larger projects and reassigned to smaller projects outside her job description; has been deprived of information necessary to do her job; and has been excluded from or ignored in department meetings and office parties.  Am. Compl. ¶¶ 61, 63–66, 69.  These are sufficient to constitute adverse actions for purposes of a retaliation claim.  *See White*, 548 U.S. at 69 (concluding that deprivation of and exclusion from opportunities that could "contribute[] significantly to the employee's professional advancement" constitute adverse actions because they "might well deter a reasonable employee from complaining about discrimination"); *see also Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 34–35 (App. Div. 2009) ("It is certainly possible for a jury to conclude that someone would be deterred from making a complaint if knowing that doing so might result in being assigned to duties outside or beneath one's normal work tasks.");  *Hinton v. City Coll. of N.Y.*, No. 05-CV-8951, 2008 WL 591802, at *8 (S.D.N.Y. Feb. 29, 2008) (holding that a reasonable jury could find that excluding an employee from participating in processes in which they are "acknowledged as a valued and important colleague" could deter a reasonable employee from complaining about discrimination and thus constitutes an adverse action).

---

[10]     The Court considers all allegations of adverse actions that occurred after January 19, 2016, for purposes of her Section 1983, EPA, NYSHRL, and NYCHRL retaliation claims.  None is time barred, *see supra* note 9, and all post-date her alleged protected activity.

Plaintiff also plausibly alleges a causal connection between her protected activity and the ensuing adverse actions.[11]  First, Vedavarz's "hostile" reaction to Plaintiff's memorandum, as well as his repeated remarks that she should not have complained and that her memorandum would make things worse, Am. Compl. ¶ 58, suggest that a retaliatory motive played at least some part in his subsequent treatment of Plaintiff.  *See Delville*, 920 F. Supp. 2d at 466 (finding direct evidence of causation where plaintiff's "superiors were angry at him for complaining about age discrimination and for filing a formal complaint").  Moreover, although the precise dates are somewhat vague, Plaintiff alleges that she experienced many of the above-referenced adverse actions in the months immediately following her complaints.[12]  Am. Compl. ¶¶ 57, 60–69.  Thus, the temporal proximity between Plaintiff's protected activity and the adverse actions supports an inference of retaliation.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (noting that five months is not too long to find the causal relationship).

## B.  Plaintiff's Title VII Retaliation Claim

Because of Title VII's statute of limitations, the only allegations that could constitute actionable adverse actions for purposes of Plaintiff's Title VII retaliation claim are those that Plaintiff asserts are recurring: namely, Plaintiff has not received a performance review since 2016; Lemieux does not invite her to meetings; Vedavarz assigns her projects outside of her job

---

[11]       Defendants do not contest that Plaintiff's complaint about pay inequity to Human Resources and to CUNY's General Counsel constituted protected activity.  *See* Defs.' Mem. of Law at 19–20; Am. Compl. ¶¶ 57, 60.

[12]       As noted *supra*, Plaintiff filed her complaint with Human Resources on January 19, 2016, and complained to CUNY's general counsel on April 29, 2016.  Am. Compl. ¶¶ 57, 60.  On June 16, 2016, Lemieux failed to introduce Plaintiff at a meeting with high-level management despite introducing all of the other employees.  *Id.* ¶ 64. In September 2016, Lemieux stopped inviting Plaintiff to monthly staff meetings.  *Id.* ¶ 63.  In late 2016, Vedavarz failed to invite Plaintiff to a holiday lunch.  *Id.* ¶ 67.  Plaintiff alleges that Vedavarz replaced her larger projects with small projects outside her job description throughout 2016.  *Id.* ¶¶ 65–66.  Similarly, beginning in 2016 and recurring through the filing of the complaint, Vedavarz applied different standards to Plaintiff's work, deprived Plaintiff of project-related information, assigned her projects outside her area of expertise, and refused to give Plaintiff another performance review.  *See id.* ¶¶ 61, 63, 65, 68–69.

description; and Vedavarz treats her differently than he treats her male colleagues.[13]  Am.

Compl. ¶¶ 61, 63, 65, 68–69.  Although it is a close call because the precise dates of these events

are not entirely clear (the approximate dates will need to be established by a preponderance of

the evidence at trial), they are adequately alleged at this stage.  Of course, if at summary

judgment Plaintiff is unable to prove that retaliatory adverse actions were taken after February 8,

2017, then her Title VII claims will be dismissed as time barred.

Defendants' motion to dismiss Plaintiff's Title VII retaliation claim is denied.

### III.  Defendants' Motion to Dismiss Plaintiff's ADA and RA Retaliation Claims is Granted

Retaliation claims brought under the ADA and the RA are analyzed under the same

pleading standard used for retaliation claims brought pursuant to Title VII, Section 1983, EPA,

and NYSHRL.  *See Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002);

*supra* Section II.

Here, Plaintiff claims that Defendants retaliated against her for raising concerns about the

accessibility of the Lehman Concert Hall.  *See* Am. Compl. ¶¶ 125–28.  Although Defendants

argue that Plaintiff was not engaged in protected activity by performing her "job duties" of

"reviewing, discussing, and debating the application of ADA accessibility standards to the

Lehman Concert Hall," Defs.' Mem. of Law, Dkt. 37 at 8, an employee's job responsibilities are

not automatically excluded from being protected activity under the ADA and the RA.  *See*

*Littlejohn v. City of New York*, 795 F.3d 297, 318 (2d Cir. 2015) ("[I]f an employee—even one

whose job responsibilities involve investigating complaints of discrimination—. . . personally

complains or is critical about the discriminatory employment practices of her employer, that

---

[13]     As noted *supra*, as to Plaintiff's Title VII claim, conduct that occurred before February 8, 2017 is time-barred.  *See supra* note 9; *Petrosino v. Bell Atl.*, 385 F.3d 210, 219 (2d Cir. 2004).

employee has engaged in a protected activity under [the] opposition clause.") (cleaned up)). Because Plaintiff continually raised concerns about the design for the hall and specifically complained that it was not ADA-compliant, Am. Compl. ¶¶ 74–78, Plaintiff was arguably engaged in protected activity.  *See Littlejohn*, 795 F.3d at 319 (explaining that because plaintiff "was not simply conveying others' complaints of discrimination . . . or alerting them to Title VII's mandates [but rather] was complaining about what she believed was unlawful discrimination," she was engaged in protected activity for purposes of a retaliation claim).

Even assuming Plaintiff's complaints constituted protected activity, however, Plaintiff has not plausibly alleged that she experienced any adverse action as a result of engaging in such activity.[14]  Accordingly, Plaintiff's retaliation claims under the ADA and the RA are dismissed.

## IV.   Defendants' Motion to Dismiss Plaintiff's Title IX Claims is Granted

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a). Plaintiff contends that she may seek redress for gender discrimination and retaliation under Title IX as an employee of a federally funded educational institution.  *See* Am. Compl. ¶¶ 12, 81-84. "Neither the Supreme Court nor the Second Circuit have [sic] addressed whether there is a

---

[14]     Claims brought under the ADA and the RA are governed by the same 300-day limitations period that applies to Title VII claims.  *See Valtchez v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010).  Accordingly, the only adverse actions that could support Plaintiff's retaliation claim under the ADA or the RA are those noted *supra* in connection with Plaintiff's Title VII retaliation claim, *see* Am. Compl. ¶¶ 61, 63, 65, 68–69; *supra* Section II(B).

Plaintiff does not claim that any of these alleged acts occurred as a result of her complaints about the Lehman Concert Hall's accessibility.  Moreover, all of these purported incidents occurred, at the earliest, in 2017, two years after Plaintiff last complained about the design of the Concert Hall.  *See* Am. Compl. ¶¶ 76–77.  As such, Plaintiff fails plausibly to allege that any of the alleged adverse actions was in retaliation for her complaints about the accessibility of the Lehman Concert Hall.  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all.").

private right of action for employment discrimination under Title IX." *Gayle v. Children's Aid Coll. Prep Charter Sch.*, No. 18-CV-9874, 2019 WL 3759097, at *5 (S.D.N.Y. July 29, 2019) (quotation omitted).[15]  Nevertheless, an "overwhelming majority of district courts in this Circuit have found that an implied private right of action *does not* exist[] under Title IX for employees alleging gender discrimination in the terms and conditions of their employment."[16]  *Id.* (emphasis in original)

This Court joins in that reasoning and agrees that Title VII is the exclusive remedy for employees alleging employment discrimination on the basis of sex.  An implied right of action under Title IX would disrupt the balanced remedial scheme of Title VII; "Title VII requires plaintiffs to exhaust administrative remedies with the EEOC before they can sue for employment discrimination in federal court."  *Gayle*, 2019 WL 3759097, at *6; *see also Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995); *Philpott v. New York*, 252 F. Supp. 3d 313, 318 (S.D.N.Y. 2017) ("[A]llowing employees to sue for discrimination under Title IX would enable many [employees of federally funded educational institutions] to bypass the remedial process that Congress established under Title VII."); *Vega v. State Univ. of N.Y. Bd. of Trs.*, No. 97-CV-5767, 2000 WL 381430, at *3 (S.D.N.Y. Apr. 13, 2000) ("To hold that Title IX permits a private right of action for employment-related discrimination would be to offer employees of educational

---

[15]     Other Circuits are divided on this question.  The First, Third, Fourth, and Sixth Circuits have held that employment discrimination claims are actionable under Title IX, while the Fifth and Seventh Circuits have held that they are not.  *Compare Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 563 (3d Cir. 2017) (recognizing claim), *Ivan v. Kent St. Univ.*, No. 94-4090, 1996 WL 422496, at *2 n.10 (6th Cir. 1996) (same), *Preston v. Commonwealth of Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206–07 (4th Cir. 1994) (same), *and Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896–97 (1st Cir. 1988) (same), *with Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 862 (7th Cir. 1996) (rejecting claim), *and Lakosi v. James*, 66 F.3d 751, 754 (5th Cir. 1995) (same).

[16]     *See, e.g.*, *Piscitelli v. Univ. of Saint Joseph*, No. 19-CV-1589, 2020 WL 3316413, at *1 (D. Conn. June 18, 2020); *Vengalattore v. Cornell Univ.*, No. 18-CV-1124, 2020 WL 2104706, at *5 (N.D.N.Y. May 1, 2020); *Othon v. Wesleyan Univ.*, No. 18-CV-0958, 2020 WL 1492864, at *9 (D. Conn. Mar. 27, 2020); *Solomon v. Fordham Univ.*, No. 18-CV-4615, 2020 WL 127617, at *9 n.11 (S.D.N.Y. Mar. 17, 2020); *Gayle v. Children's Aid Coll. Prep Charter Sch.*, 18-CV-9874, 2019 WL 3759097, at *5 (S.D.N.Y. July 29, 2019); *Philpott v. New York*, 252 F. Supp. 3d 313, 319 (S.D.N.Y. 2017); *Uyar v. Seli*, No. 16-CV-186, 2017 WL 886934, at *6 (D. Conn. Mar. 6, 2017).

institutions receiving federal funds a mechanism for relief that differs significantly from the avenues available for other employees.").  Thus, notwithstanding the fact that Plaintiff is an employee of a federally funded educational institution, Am. Compl. ¶ 12, she has no remedy under Title IX for sex discrimination in employment.  Accordingly, Plaintiff's Title IX claims are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  The following claims are DISMISSED: Plaintiff's gender discrimination claim under Title IX (Count One); Plaintiff's retaliation claim under Title IX (Count Two); Plaintiff's retaliation claim under the ADA (Count Thirteen); and Plaintiff's retaliation claim under the RA (Count Fourteen).  The balance of Defendants' motion to dismiss is denied.

A pretrial conference will be held on **September 11, 2020 at 11:00 a.m.**  The parties must appear for the conference by dialing **888-363-4749**, using the access code **3121171** and the security code **9829**.  In accordance with the Court's individual rules, the parties must submit a joint letter and proposed case management plan by **September 3, 2020.**

The Clerk of Court is directed to close the open motion at docket entry 35.


**SO ORDERED.**

**Date:  August 24, 2020**                            **VALERIE CAPRONI**
**New York, New York**                            **United States District Judge**